UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ALVIN HOWARD CANELL,

    Plaintiff,

    v.

DEPARTMENT OF CORRECTIONS;
SARA DEVENY (AHTANUM VIEW
CORRECTIONS); KELLY WEST
(ACCOUNTANT, AVCC); ROY
GONZALES, DEPARTMENT OF
CORRECTIONS; RISA KLEMME
(AIRWAY HEIGHTS); OFFICER
BAILEY (AIRWAY HEIGHTS
PROPERTY OFFICER); MAGGIE
MILLER-STOUT
(SUPERINTENDENT AIRWAY
HEIGHTS),

    Defendants.

NO. CV-09-3054-RHW

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

    Before the Court is Defendants' Motion for Summary Judgment (Ct. Rec. 21). The motion was heard without oral argument.

    In his complaint, Plaintiff asserts three claims: (1) deliberate indifferent to his serious medical needs; (2) violation of due process when his mail was destroyed after prison officials rejected it to prevent service of summons and complaint; (3) violation of due process and equal protection, and retaliation, in seizing funds from prison account to pay for indigent legal mail and legal copies.

    At the time he filed the Complaint, he was an inmate at the Ahtanum View Corrections Center, in Yakima, Washington. Defendants removed the action to the

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 1**

1  Eastern District of Washington on June 4, 2009.  They now move for summary
2  judgment.

3                          **STANDARD OF REVIEW**

4          Summary judgment is appropriate when "there is no genuine issue as to any
5  material fact and the movant is entitled to judgment as a matter of law." Fed. R.
6  Civ. P. 56.  A material fact is one which might affect the outcome of trial under the
7  governing law. *Lindahl v. Air France*, 930 F.2d 1434, 1436 (9th Cir. 1991)
8  (citation omitted).  The substantive law in the case is essential because it
9  determines which facts are relevant to resolution of a case. *Anderson v. Liberty*
10 *Lobby Inc.*, 477 U.S. 242, 248 (1986).  response to summary judgment, the non-
11 moving party may not rely on its pleadings, but must respond with "specific facts
12 showing a genuine issue for trial." Fed. R. Civ. P. 56. The non-moving party must
13 present facts with probative value, which "tend to support[] the complaint."
14 *Anderson*, 477 U.S. at 249.  The facts are to be read in the light most favorable to
15 the non-moving party. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th
16 Cir. 2007).  To show a genuine issue exists the party must show that a reasonable
17 jury could find for his/her side. *Id.*  The finding of a genuine issue of material fact
18 does not need to be conclusive in favor of the party, but must show that a dispute
19 as to the facts requires a trial to resolve the issue. *Id.* at 248-49.  Therefore,
20 summary judgement is only appropriate where there is no disagreement as to
21 material facts which would require a jury to consider the facts or the facts are "so
22 one-sided that the [one] party must prevail as a matter of law." *Id.* at 251-52.

23                          **STATEMENT OF FACTS**

24         Plaintiff's claims surround three distinct factual scenarios.  The facts are
25 viewed in the light most favorable to Plaintiff, the non-moving party.

26 **1.    Deliberate Indifference Claim**

27         Plaintiff experienced a stroke in 2007.  Because of the stroke and because of
28 his diabetes, Plaintiff was issued a pair of specialty issue work boots in August,

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT** ~ 2

2007.  Generally, inmates are issued tennis shoes.  A Health Status Report (HSR) is required for any type of footwear other than tennis shoes.  A HSR was issued on August, 2007 at the Ahtanum View Corrections Center (AVCC) that was signed by a medical care provider that stated "needs properly fitted shoes for work boots."

In January 14, 2008, Plaintiff was moved to Airway Heights (AHCC) to receive therapy.[1]  He arrived at AHCC after 7 p.m. and remained in the infirmary for two days.  On January 16, 2008, he was released to the general population and he went to the property room to retrieve his property.  He asked Defendant Bailey for his boots, and she responded that the boots are not allowed, except for work.  She believed the boots were contraband, and thus, she confiscated them.  Plaintiff told Defendant Bailey that he had been transferred to AHCC because of a stroke and he was there for physical therapy.  Plaintiff was not permitted to bring anything with him during the transfer.

Defendant Bailey called the AHCC medical department on January 14, 2008 and was told that no HSR was available.   In addition to confiscating the boots, Defendant Bailey also confiscated a pair of inserts, but these were returned to Plaintiff later on that same day.  Plaintiff was given a pair of sneakers instead, which caused him pain and made it difficult to walk.  Plaintiff injured himself many times because he was forced to wear the tennis shoes instead of the boots.

On January 24, 2008, Plaintiff was seen at AHCC medical and indicated that he would like to get some footwear.  He was referred to physical therapy and was given a consult for his footwear.  Plaintiff was seen on February 13, 2008 and he was fitted with diabetic shoes and inserts.  Plaintiff was without his work boots from January 14, 2008 to February 13, 2008.

After the boots were confiscated on January 14, 2008, they could not later be

---

[1]There are no physical therapy facilities available at AVCC whereas AHCC has on-site rehabilitation services.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3**

located in the Property Room.

**2.    Mail Destruction/Restriction Claim**

In early 2008, Plaintiff sought to obtain funds from his family in order to serve the defendants with the summons and complaint in a lawsuit that had been filed in Spokane County Superior Court.  His family sent him a letter in response, but on February 8, 2008, Defendants rejected the letter, stating that there was a grease stain on the envelope.  Plaintiff attempted to resolve the issue by sending kites and letters to several prison officials.  At some point, Plaintiff was told that the mail room could no longer find the confiscated letter.

In response to this lawsuit, Defendants investigated the matter further and found the confiscated letter.  Defendant Klemme upheld the mail restriction because of the stains.  The letter from his sister indicated that she was not in a position to send Plaintiff money.

**3.    Payment for Legal Mail Claim**

It is undisputed that Plaintiff is a litigious prisoner.  He has active legal cases in both the state and federal courts.

Plaintiff earns approximately $50 a month from his prison job.  He gets paid on the tenth day of every month.  From this $50, a percentage is taken out to pay various debts, including crime victims compensation, Legal Financial Obligations,[2] store debt, copy debt and legal mail debt.

Pursuant to Wash. Rev. Code § 72.09.450(1), if an inmate is indigent the inmate is not required to pay the cost of sending legal mail at the time the mail is

---

[2]Legal Financial Obligation (LFOs) are specified by statute and are automatically taken from an offender's deposit at the time the deposit is posted to the offender's trust fund.  Deductions are mandatory, and are not facilitated by an inmate's use of Request to Transfer Funds forms, or Postage Transfers.  The deductions may not reduce the offender's account below the indigency level.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4**

sent.[3]   Rather, the cost of sending the legal mail is recorded as debt in the

prisoner's account.  The prison is permitted to recoup the debt from the inmate's

account when the inmate is no longer indigent.  § 72.09.450(2).  The indigency

standard under state law requires that the amount of money on the day of the

withdrawal and thirty days prior should be below ten dollars.  § 72.09.015(13).[4]

When sending legal mail, an inmate attaches a postage transfer slip to the

envelope that authorizes DOC to either take any money from his or her current

account to pay the postage.  If the inmate is indigent the amount is recorded as

debt.  The same policy applies for legal copies.

In November, 2008, Plaintiff had several copies made and tendered a

---

[3](1) An inmate shall not be denied access to services or supplies required by state or federal law solely on the basis of his or her inability to pay for them.

(2) The department shall record all lawfully authorized assessments for services or supplies as a debt to the department. The department shall recoup the assessments when the inmate's institutional account exceeds the indigency standard, and may pursue other remedies to recoup the assessments after the period of incarceration.

(3) The department shall record as a debt any costs assessed by a court against an inmate plaintiff where the state is providing defense pursuant to chapter 4.92 RCW. The department shall recoup the debt when the inmate's institutional account exceeds the indigency standard and may pursue other remedies to recoup the debt after the period of incarceration.

(4) In order to maximize the cost-efficient collection of unpaid offender debt existing after the period of an offender's incarceration, the department is authorized to use the following nonexclusive options: (a) Use the collection services available through the department of general administration, or (b) notwithstanding any provision of chapter 41.06 RCW, contract with collection agencies for collection of the debts. The costs for general administration or collection agency services shall be paid by the debtor. Any contract with a collection agency shall only be awarded after competitive bidding. Factors the department shall consider in awarding a collection contract include but are not limited to a collection agency's history and reputation in the community; and the agency's access to a local database that may increase the efficiency of its collections. The servicing of an unpaid obligation to the department does not constitute assignment of a debt, and no contract with a collection agency may remove the department's control over unpaid obligations owed to the department.
Wash. Rev. Code § 72.09.450.

[4](13) "Indigent inmate," "indigent," and "indigency" mean an inmate who has less than a ten-dollar balance of disposable income in his or her institutional account on the day a request is made to utilize funds and during the thirty days previous to the request.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5**

withdrawal slip, even though he had no money in his account at the time. Rather than process the transfer slip when it was received, Defendant West held the transfer slips until Plaintiff was paid on December 10, 2008. Consequently, Defendants withdrew Plaintiff's entire paycheck to cover the costs of the legal copies.

The withdrawal was made pursuant to a newly enacted policy regarding the payments for legal mail. Previously, Defendants processed the withdrawal on a daily basis, which in effect permitted the inmates to time their request for withdrawal to when they did not have money in their account. Defendants changed the policy to processing the transfer slips once a month and having the withdrawal coincide with the day the inmates are paid for their institutional work positions.

According to Plaintiff, this change in policy was in retaliation against Plaintiff due to his legal activities. He cites to an email written by Defendant West, in which she asks her supervisor if she can change the policy. Specifically, she writes:

> Dan-I know that policy states that we must send out legal mail and make legal copies whether the offender has funds or not. If he has funds we take them, but if he doesn't we create a debt. Unfortunately the offenders are well aware of this policy and take advantage of it to the fullest degree. Many of our offenders here get paid, spend all their money on store and property purchases, and then submit a form for legal copies and legal mail.
>
> My question is . . . is it written in policy that funds transfer forms will be process within a certain amount of time. I can't find it written anywhere. I would like to begin holding funds transfers for legal mail and legal copies for those offenders that we know will be receiving a paycheck and process them right after the paycheck so they are no longer able to manipulate the system.
>
> For example: I have a funds transfer form right now for an offender in the amount of $85.00 for legal copies and he has already submitted a request to his counsel for more copies that will amount to approximately another $35.00. He currently has no funds, but will receive a $55.00 paycheck on the 10th. He does this every month and I would like to wait until the 10[th] to process the funds transfer.
>
> So . . . Can I do this without disregarding any policies.

(Ct. Rec. 41, Ex. 20).

///

**DISCUSSION**

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6**

Plaintiff is asserting three separate claims: (1) Deliberate indifference to medical needs; (2) Due Process - Confiscation and Loss of Mail; and (3) First Amendment, Due Process and Equal Protection - Change in Policy for Payment of Legal Mail.  Each of these claims will be addressed in turn.

**1.    Deliberate Indifference to Medical Needs**

Plaintiff alleges that Defendants were deliberately indifferent to his medical needs, and therefore violated his Eighth Amendment rights when Defendant confiscated Plaintiff's boots that had been medically prescribed to him to help with pain caused by diabetes and a stroke that made his right foot drag on the ground when he walked.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Not every claim of inadequate medical treatment states a violation of that amendment.  *Id.* "Medical treatment violates the Eighth amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

Deliberate indifference is a high standard.  To establish a claim for deliberate indifference to medical needs, Plaintiff must first show "a serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'  *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006).  Plaintiff must also show that the defendant's response to the need was deliberately indifferent.  *Id.* This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.*  A negligent or "inadvertent failure to provide adequate medical care" alone does not state a claim under § 1983.  *Id.*

Here, Plaintiff has not met his burden of showing triable issues of fact that Officer Bailey was deliberately indifferent to his medical needs.  At best, Plaintiff

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 7

has shown that Officer Bailey was negligent in confiscating his boots.  As such, summary judgment on his Eighth Amendment claim is appropriate.

**2.    Due Process - Confiscation and Loss of Mail**

Plaintiff was denied access to a letter from his sister.  He alleges that this denial violated his due process and that the officers were negligent in losing the letter.

The Court finds that this issue is moot.  The letter was ultimately found and Defendant cannot show actual injury because the letter did not provide the money to assist him in serving his complaint.  Moreover, Defendants have proffered a legitimate penological reason for rejecting the letter.  As such, summary judgment with respect to Plaintiff's claim for the confiscated and missing letter is appropriate.

**3.    First Amendment, Due Process and Equal Protection** - **Payment for Legal Mail**

Plaintiff alleges that his constitutional rights were violated as a result of a change in policy with respect to the processing of the payments for legal mail and copying, and because he was overcharged for envelopes.

**A.    First Amendment**

With respect to the First Amendment claim, Plaintiff relies on two theories: (1) access to courts; and (2) retaliation.

**i.    Access to Courts**

State prisoners have a right to access the courts.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  "[A]ccess to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty."  *Id.* at 384.  To succeed on his access to courts claim, Plaintiff must show: 1) the loss of a "nonfrivolous" or "arguable" underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8**

that is not otherwise available in a future suit. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). With respect to the first element, Plaintiff must demonstrate that official acts or omissions "hindered his efforts to pursue a [nonfrivolous] legal claim. *Lewis*, 518 U.S. at 351.

Here, Plaintiff has not pointed to any instance where his efforts were hindered because of the change in the policy or the price of the envelopes. As such, summary judgment on his right to access courts claim in favor of Defendants is proper.

### ii.    Retaliation

Plaintiff alleges that the change in policy and the overcharging for the envelopes was in retaliation for his exercising his First Amendment right to file civil litigation. Prisoners have a constitutionally protected right to not be retaliated against for exercising a First Amendment right to file civil litigation. *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). Within the prison context, Plaintiff must establish five elements in order to successfully bring a First Amendment retaliation claim: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

Here, Plaintiff has not established that he has suffered an adverse action. The underlying issue is not whether Plaintiff is entitled to free legal mail. Rather, the question is whether he pays for it now, as the new policy requires, or later, as Plaintiff wants to do. The fact that Plaintiff has to pay for it now is not an adverse action that would support a claim for retaliation. Moreover, Plaintiff has not shown that the challenged action "did not reasonably advance a legitimate correctional goal." The Washington statute clearly provides that inmates are required to pay for their legal mail. On the other hand, the statute provides a

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9**

1  mechanism under which truly indigent inmates are not prohibited from sending

2  legal mail by deferring payment for the mail.  Requiring inmates who are not

3  indigent to pay for the legal mail is consistent with the statute and meets legitimate

4  penological goals.  Summary judgment in favor of Defendants on Plaintiff's

5  retaliation claim is appropriate.

6  **B.    Due Process**

7  Plaintiff also asserts that he has an interest in the $.07 that he was

8  overcharged by Defendants that is protected by the Due Process claim.  Inmates do

9  not have a constitutionally protected right to be able to purchase items from the

10  commissary at a particular price or to prevent the charging of exorbitant prices.

11  *See Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir.1996)(stating that "we know

12  of no constitutional right of access to a prison gift or snack shop"); *McCall v. Keefe*

13  *Suppy Co.*, 2003 WL 21716435 (10th Cir. 2003)(finding that inmate's allegation

14  that he was overcharged for goods at the prison commissary failed to state a

15  constitutional claim); *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir.1980) (no

16  legal basis exists for a demand that inmates be offered items for purchase at or near

17  cost); *Lucas v. Rivera*, 2009 WL 902355 *2 (D.S.C. March 31, 2009)(stating that

18  "Plaintiff has no right protected by the constitution to buy items at the lowest price

19  possible"); Lineberry v. United States, 2009 WL 499763 (E.D.Tex. Feb.27,

20  2009)(rejecting inmate's claim that his constitutional rights were violated based

21  upon the prison store charging excessive prices); *Hopkins v. Keefe Commissary*

22  *Network Sales*, 2007 WL 2080480 *5 (W.D.Pa. July 12, 2007)(stating that inmates

23  have no federal constitutional right to purchase items from the commissary at any

24  particular price or to have the commissary restrained from charging even

25  exorbitant prices); and *Collins v. Virginia*, 2006 WL 1587467 *1 (W.D.Va. June 6,

26  2006) (stating that "inmates have no constitutionally protected interest in

27  purchasing stamps, food substances, or any other good through the prison

28  commissary at the cheapest price possible").

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT** ~ 10

As such, summary judgment in favor of Defendants with respect to Plaintiff's due process claim is proper.

**C.    Equal Protection**

Finally, Plaintiff alleges that his equal protection rights were violated.  "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Plaintiff has not demonstrated that he is a member of a protected class.

As such, summary judgment in favor of Defendants with respect to Plaintiff's equal protection claim is appropriate.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion for Summary Judgment (Ct. Rec. 21) is **GRANTED**.

2.    The District Court Executive is directed to enter judgment in favor of Defendants and against Plaintiff on Plaintiff's Section 1983 claims.

3.    The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order, furnish copies to Plaintiff and counsel, and **close the file**.

**DATED** this 19th  day of April, 2010.


   *s/Robert H. Whaley*

ROBERT H. WHALEY
United States District Judge

Q:\CIVIL\2009\Canell\grantsj.com.wpd

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 11